FILED
U.S. DISTRICT COURT
2008 SEP 11 AM 11:46
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO.: CR208-10 |
| DEREK A. HAPNEY | |

## ORDER

Defendant Derek A. Hapney ("Defendant") has been charged with driving under the influence of alcohol on a military installation, in violation of 18 U.S.C. §§ 7 and 13 and O.C.G.A. § 40-6-391(a)(5). Defendant filed a Motion to Suppress, or in the Alternative, a Motion in Limine, and the Government filed a Response. The undersigned conducted an evidentiary hearing on July 29, 2008, at which Master-at-Arms Ronald Eady, Sergeant Rodger Wisdom, and Michael Bustamante testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing established the following:

During the early morning hours of January 26, 2008, Defendant attempted entry onto Naval Submarine Base Kings Bay, Georgia, during a time when the Base had a Selective Traffic Enforcement Program ("STEP") traffic inspection in place. The STEP inspection required security personnel to stop every vehicle entering and exiting the Base and check drivers' licenses, proof of insurance, registration, and for possible impairment of the drivers. Master-at-Arms Ronald Eady ("Eady") was the officer who had initial contact with Defendant during the STEP inspection. Eady asked Defendant for his license, insurance, and registration, and, while Defendant gathered this

information, Eady asked Defendant several questions, including whether he had been drinking. Eady testified he did not recall smelling any odor coming from Defendant or his vehicle or Defendant acting as if he had been drinking. However, Eady testified Defendant admitted to drinking approximately four (4) beers about two (2) hours before the inspection. Eady also testified it was his practice to turn a driver over to personnel with training in investigating whether someone was driving under the influence after a person admitted having anything to drink. Eady called Sergeant Rodger Wisdom ("Wisdom") over to Defendant's car.

Wisdom asked Defendant to get out of his car because he wanted to be sure Defendant was a safe driver. Wisdom asked Defendant if he would submit to three (3) field sobriety tests—the horizontal gaze nystagmus ("HGN"), walk and turn, and one-leg stand. Wisdom testified that Defendant failed the HGN and walk and turn tests and did not perform the one-leg stand test because he had a knee injury. Wisdom stated Defendant failed the preliminary breath test as well. Wisdom testified that, based on Defendant's failure of two (2) field sobriety tests and the preliminary breath test, he placed Defendant under arrest, read him his implied consent rights, and took him to security headquarters. Wisdom testified that he did not recall Defendant asking to have his blood tested.

Michael Bustamante ("Bustamante") was the operator of the Intoxilyzer 5000 machine on the night in question. He testified that Defendant was observed for 20 minutes prior to having the breath tests administered. Bustamante also testified that the results of Defendant's first and second samples revealed a 0.119 blood alcohol

AO 72A
(Rev. 8/82)

2

concentration level. Bustamante also testified he did not recall Defendant asking to have his blood tested.

## ISSUES PRESENTED

Defendant contends he was arrested without probable cause. Defendant also contends testing of his breath was conducted illegally. Defendant asserts he was not advised of his right to have an independent test, as required under Georgia law.[1]

## DISCUSSION AND CITATION TO AUTHORITY

### I.  Probable Cause to Stop and Arrest

Defendant asserts he was not violating any law at the time his vehicle was stopped and that his subsequent arrest was not supported by probable cause. The Government alleges that, although the particular place on the Base where Defendant was stopped is not closed completely to the public, it is federal property under the jurisdiction of the commanding officer, who can exclude all civilians from any area or restrict access to the Base. The Government also alleges the commanding officer authorized the STEP site inspection to "ensure the safety, morale, welfare, and good order and discipline of both military personnel and civilians . . . [and] that drivers on [the B]ase wear seatbelts and are properly licensed.

"The validity of closed base searches taken without particularized suspicion does not turn on the case-by-case application of a special needs or exigent circumstances balancing test. . . [it is] clear that searches on closed military bases have long been exempt from the usual Fourth Amendment requirement of probable cause." United States v. Jenkins, 986 F.2d 76, 78 (4th Cir. 1993) (citation omitted). The purpose

---

[1] It is difficult to discern what Defendant's contentions are because his brief consists of boilerplate assertions and does not set forth facts specific to his case.

behind this exemption is "to protect a military installation that is vital to national security." Id. A base commander has the authority "to place restrictions on the right of access to a base." United States v. Ellis, 547 F.2d 863, 866 (5th Cir. 1977).

"Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. Instead, an arrest will be upheld if the objective circumstances justify the arrest." United States v. Jones, 377 F.3d 1313, 1314 (11th Cir. 2004) (internal citations omitted). Probable cause "requires merely a probability--less than a certainty but more than a mere suspicion or possibility." Kellogg v. State, 288 Ga. App. 265, 269, 659 S.E.2d 841, 845 (2007) (quoting State v. Sledge, 264 Ga. App. 612, 614, 591 S.E.2d 479, 480 (2003)). "Although probable cause involves a greater certainty of criminal behavior than reasonable suspicion, probable cause does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction. Probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime." United States v. Lindsey, 482 F.3d 1285, 1291 (11th Cir. 2007) (internal citations and punctuation omitted). An officer need only "have knowledge or reasonably trustworthy information that [the] suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely." Kellogg, 288 Ga. App. at 269, 653 S.E.2d at 845.

Eady did not need probable cause to support his stop of Defendant's vehicle as he attempted entry onto Kings Bay. Every driver entering or exiting the base was subject to being stopped prior to authorization to enter or leave the base, and the purpose of the STEP inspection was to ensure the safety of the people living on the

AO 72A
(Rev. 8/82)

Base and the general public, and to ensure drivers were wearing seatbelts and were properly licensed. In addition, Wisdom's arrest of Defendant is supported by probable cause. Wisdom was informed Defendant admitted to drinking that night. Moreover, Defendant failed two field sobriety tests as well as the preliminary breath test. These portions of Defendant's Motion are **denied**.

## II.　Implied Consent

Defendant asserts Georgia procedural rules were not followed at the time of his arrest and that the results of his tests should be excluded from evidence. The Government counters that there is no requirement that the Georgia procedural rules be followed onboard the Base.

The Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13, states that:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired . . ., is guilty of an act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

"It is generally understood that the purpose of the Act is to 'fill the gaps in federal criminal law.' It is the law of the Eleventh Circuit that such a gap exists where '"no act of Congress directly makes a defendant's conduct punishable.'" United States v. Sasnett, 925 F.2d 392, 395 (11th Cir. 1991) (internal citations omitted). "Only those portions of state law defining the elements of an offense and proscribing punishment are automatically assimilated into federal law by the Federal Assimilative Crimes Act; other provisions of state law relating to the prosecution are assimilated only if they do not conflict with federal laws on point." United States v. Garner, 874 F.2d 1510, 1512 (11th

Cir. 1989). In other words, "[f]ederal courts are not required to follow specific provisions of state law which go beyond establishing the elements of an offense and the range of punishment, or which are inconsistent with federal policies expressed in federal statutes." United States v. Dillon, 983 F. Supp. 1037, 1040 (D. Kan. 1997) (quoting United States v. Sain, 795 F.2d 888, 890-91 (10th Cir. 1986)). "Therefore, state statutes which are procedural or regulatory are not assimilated under the [Assimilative Crimes Act]." Id. (citing United States v. Roberts, 845 F.2d 226, 228-29 (9th Cir. 1988)). The federal implied consent statute provides:

> Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.

18 U.S.C. § 3118.

Because Defendant's arrest occurred on federal property, the federal implied consent law controls. The Georgia implied consent warning and its attendant procedural requirements are not applicable. Likewise, the assertion that certain procedural requirements were not met prior to administering tests on Defendant is a matter that impacts the credibility of the results of the tests, not the admissibility thereof. Having found this, however, the only credible evidence before the Court is that Defendant was read the Georgia implied consent notice upon his arrest. Defendant's seeming assertion in this regard is disingenuous. These portions of Defendant's Motion are **denied**.

## II. Chemical Test of his own Choosing

Defendant contends he was not advised of his right to obtain an independent chemical test of his own choosing. Defendant asserts this failure to accommodate him in obtaining a chemical test of his own choosing requires the exclusion of the test results.

Section 3118 does not provide for a suspect's election to obtain his own chemical testing. In addition, and as noted above, the credible evidence before the Court is that Defendant was read the Georgia implied consent notice, which includes an advisement that a suspect is entitled to additional chemical testing[2] of his own choosing. Thus, this portion of Defendant's Motions is without merit. Wisdom was under no duty to *ask* Defendant if he wished to obtain an additional chemical test of his own choosing. Moreover, there is no evidence before the Court that Defendant asked to have an additional chemical test of his own choosing. Defendant's Motion on this ground is **denied**.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress, or in the Alternative, Motion in Limine is **DENIED**.

**SO ORDERED**, this 11th day of September, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[2] The relevant portion of the statute provides: "After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing." O.C.G.A. § 40-5-67.1(b)(2).